MILDRED FRUCHTMAN *v.* CYRUS MANNING ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued May 8—decided May 28, 1968

*Theodore A. Lubinsky,* for the appellant (named defendant).

*Richard P. Heffernan,* with whom was *James E. Heffernan, Jr.,* for the appellee (plaintiff).

ALCORN, J. The defendant Cyrus Manning is the son of the plaintiff. The plaintiff brought this action against him and his wife, Natalie Manning, alleging that the plaintiff had withdrawn $9000 from her bank account in Brooklyn, New York, and had delivered that sum to Cyrus in reliance on his representation that the interest rates paid by Connecticut banks were higher than those paid by New York banks, that it would be safer for her to withdraw the sum from her account in Brooklyn, and that he would deposit the money in a Connecticut bank in her name. It was further alleged that the representations were false, were known by both defendants to be false and were made with the intent to cheat and defraud the plaintiff. Finally, it was alleged that upon receipt of the $9000 the defendants used the money for their own use and benefit. The defendant Cyrus Manning admitted none of the allegations of the complaint except the receipt of the $9000 and pleaded two special defenses: first, that he received the money as a gift; and, second, that the money was held by the plaintiff in trust for

him.   The defendant Natalie Manning admitted none of the allegations of the complaint and filed no special defense.   At the conclusion of the plaintiff's case, the court granted a nonsuit as to Natalie Manning.   Judgment was rendered in favor of the plaintiff against Cyrus Manning, hereinafter called the defendant, and he has taken this appeal.

The case presented mainly a question of fact for the trial court as to whether the sum which the defendant admittedly received was acquired by him as the result of his misrepresentation as alleged by the plaintiff, or as a gift, as claimed by him.   Most of the attacks on the finding have been abandoned, and the few paragraphs of subordinate facts which are attacked do not require correction.   The single issue, presented and argued by both parties, is whether the defendant obtained the money as a result of his false representations.

The plaintiff lived with the defendant's father in Brooklyn, New York, where they had a joint bank account amounting to $10,000.   The defendant's father died in October, 1962, and, following his death, the plaintiff told the defendant of the existence of the account.   Shortly thereafter, she withdrew the balance standing in that account and, on November 1, 1962, opened a new savings account in Brooklyn in the amount of $9988.97 in the name of "Mildred Fruchtman In Trust For Cyrus Manning." In making this deposit, the plaintiff intended to use the money for her own purposes and to have any balance left in the account at the time of her death belong to the defendant.   About a week after the plaintiff opened this account, the defendant called her and told her that he needed the money.   He represented to her that he would deposit the money in Connecticut because the interest rates were

higher there than in New York and that he would send signature cards for her to execute in connection with the opening of the Connecticut account. It was the intention of the defendant, however, in making these representations, to obtain the money and use it for his own purposes. The plaintiff relied on the defendant's representations, went with the defendant to the savings bank in Brooklyn on November 7, 1962, withdrew $9000 from the account and delivered it to the defendant. She never intended to make a gift of the money to him. The withdrawal was in the form of a bank check payable to the plaintiff. The check was endorsed by her, by the defendant and by The Shellrock Co., Inc., and was paid on November 13, 1962. The plaintiff never received the promised signature cards from the defendant. The court concluded that the representations made by the defendant were false, were known by him to be false and were made with the intent to defraud the plaintiff and for the purpose of inducing the plaintiff to act upon them, and that the plaintiff did rely on the misrepresentations and acted thereon to her injury.

No facts relating to the opening of the Brooklyn account from which the money was withdrawn are before us except the manner in which the account was entitled on the deposit book and the plaintiff's intention at the time of making the deposit as found by the court. The law, if any, prevailing in New York which would be applicable to such an account is not disclosed, and consequently, lacking proof to the contrary, that law is presumed to be the same as our own. *Adamsen* v. *Adamsen,* 151 Conn. 172, 178, 195 A.2d 418; *Stenz* v. *Sandstrom,* 143 Conn. 72, 76, 118 A.2d 900; *White* v. *White,* 138 Conn. 1, 8, 81 A.2d 450. In order that the account should

amount to a valid trust fund in which the defendant would have a beneficial interest, the plaintiff must have so intended, and the manner of entitling the account is merely evidence of that intent. *Stamford Savings Bank* v. *Everett,* 132 Conn. 92, 94, 42 A.2d 662. No trust was in fact created since the court found that it was the plaintiff's intention to use the money in the account personally and to have only the balance, if any, remaining at her death go to the defendant. *Fasano* v. *Meliso,* 146 Conn. 496, 501, 152 A.2d 512. Beyond this, the court expressly found that the plaintiff never intended to give the money to the defendant.

Since the funds in the savings account belonged to the plaintiff, the remaining question is whether she parted with them because of a misrepresentation by the defendant. When the defendant represented to the plaintiff that he would deposit the money in Connecticut and send signature cards for her to execute in connection with the opening of the account, the expressed purpose was, of course, to open the account in her name. The court found, however, that his intention was to obtain the money to use for his own purposes. Consequently, his promised action, which he had no intention at that time of performing, was a fraudulent promise which would support an action of deceit. *Sallies* v. *Johnson,* 85 Conn. 77, 80, 81 A. 974; see *Barlow Bros. Co.* v. *Gager,* 113 Conn. 429, 445, 155 A. 628. The court found that the plaintiff relied on the representation, and the endorsements on the check indicate that the funds, instead of being deposited in the plaintiff's name, appear to have come into the possession of The Shellrock Co., Inc. The position occupied by this company in the scheme of things is not disclosed.

The circumstances surrounding the transaction had to be determined by the court mainly from the contradictory testimony of the plaintiff and the defendant. The question who should be believed was a matter to be determined solely by the trier. *Cappiello* v. *Haselman,* 154 Conn. 490, 496, 227 A.2d 79; *Brockett* v. *Jensen,* 154 Conn. 328, 330, 225 A.2d 190; *Morrone* v. *Jose,* 153 Conn. 275, 277, 216 A.2d 196. The court's finding of ultimate facts included all of the elements of an actionable misrepresentation and fully supports the judgment rendered. *Presta* v. *Monnier,* 145 Conn. 694, 698, 146 A.2d 404; *Ceferatti* v. *Boisvert,* 137 Conn. 280, 283, 77 A.2d 82; *Helming* v. *Kashak,* 122 Conn. 641, 642, 191 A. 525.

There is no error.

In this opinion the other judges concurred.