
MADELEINE R. BACHMANN ET AL. *v.* TIMOTHY J.
REARDON

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued April 2—decided April 29, 1952

*William J. Willetts,* with whom, on the brief, was
*Griswold Morgan,* for the appellant (defendant).

*Richard F. Corkey,* for the appellees (plaintiffs).

INGLIS, J.   The question at issue in this action is
whether two savings accounts standing in the names of
George W. Reardon and the defendant, Timothy J.
Reardon, and payable to either or the survivor are now,
after the decease of George, the property of his estate

or the property of the defendant. The trial court concluded that the accounts were the property of George's estate and rendered a declaratory judgment to that effect. From that judgment the defendant has appealed.

The following facts are undisputed: The plaintiffs were niece and nephew and next of kin of George W. Reardon, who died intestate September 10, 1947. The defendant was a brother of George and was appointed administrator of his estate. For many years prior to George's death the two brothers, both unmarried, lived and worked on a farm in Waterford. Another brother, John D. Reardon, had lived and been associated with them on the farm until he died on May 5, 1945. Immediately following John's death, George and Timothy were in a controversy with John's other heirs about the settlement of his estate. On May 14, 1945, after the controversy had started, George requested the Savings Bank of New London to change a savings account of $9034.16, of which he was the owner, to the names of George W. Reardon and Timothy J. Reardon, payable to either or the survivor, and that change was made. On the same day George made a similar request of the New London City National Bank with reference to a savings account of $1034.75, and that account was also transferred into the names of both, payable to either or the survivor. At the time of George's death the balances in the two accounts were $9629.07 and $1060.85, respectively. The funds in both accounts were contributed entirely by George. Both before and after the transfers, the bankbooks evidencing the accounts were customarily kept by George in a metal box at the family home. This box was used in common by him, Timothy and John for the safekeeping of their bankbooks and valuable papers. All the members of the household had access to it.

The question before the trial court was whether the transfers of the accounts by George constituted a present gift to Timothy of a joint ownership of the accounts with right of survivorship or were attempted testamentary dispositions. If the former, they would be valid; if the latter, they would be invalid and Timothy would take nothing from them. *Main's Appeal*, 73 Conn. 638, 644, 48 A. 965. To constitute a valid gift inter vivos of personal property, there must be not only a delivery of possession of the property but also an intent on the part of the donor that title shall pass immediately. *Guinan's Appeal*, 70 Conn. 342, 347, 39 A. 482; *Main's Appeal*, supra, 640. In determining this intent, the time when the use or the enjoyment of the property comes to the other party is not conclusive of the issue. A gift may be valid even though the original owner's intent is to postpone the enjoyment of the property to a future date. *Candee* v. *Connecticut Savings Bank*, 81 Conn. 372, 374, 71 A. 551. It is essential, however, that the original owner's intent be to pass the title or ownership immediately.

In the present case the trial court found that, in causing the bank accounts to be changed George intended that the balances remaining in the accounts at the time of his death would then go to Timothy, and he did not intend to make a present gift of the funds on deposit in the accounts. The defendant has attacked this finding.

"A question of intent [as to the making of a gift] is a question of fact, the determination of which is not reviewable unless the conclusion drawn by the trier is one which cannot reasonably be made." *Meriden Trust & Safe Deposit Co.* v. *Miller*, 88 Conn. 157, 162, 90 A. 228; *Hartford-Connecticut Trust Co.* v. *Slater*, 114 Conn. 603, 612, 159 A. 578; *Kriedel* v. *Krampitz*, 137 Conn. 532, 534, 79 A. 2d 181. The principal evi-

dence in the case from which an intent to make a present gift might be inferred was the bare fact that George had directed that the accounts be made payable either to himself or to Timothy. This is some evidence, but it is not conclusive. *Stamford Savings Bank* v. *Everett,* 132 Conn. 92, 94, 42 A. 2d 662. As we said in a case very similar on its facts to this, "The fact that a part of the deposits were made in the plaintiff's name affords the strongest evidence of an intention to make a gift; but that does not necessarily show an intention to make a present gift; it is equally consistent with an intention to have the gift take effect at some future time." *Burton* v. *Bridgeport Savings Bank,* 52 Conn. 398, 402.

In support of the inference as to intent drawn by the trial court, there was substantial evidence. In the first place, it was undisputed that the occurrence which motivated the transfer was the controversy concerning the probate of John's estate. It was, therefore, quite likely that George's purpose was to attempt to so arrange his savings deposits as to avoid the necessity of their going through probate. Secondly, it appeared that after the transfers George had made deposits in and withdrawals from one of the accounts, but Timothy had done neither. This is an indication that it was intended that Timothy should have no title to the accounts until after George's death. In the third place, there was evidence of statements made by George as to his intention. He said to Timothy himself: "I worked with you all my life. I want you to have the money if I should get hurt or pass away. . . ." He also told his sister that he was going to fix his savings accounts so there would be no trouble when he died. From all of the evidence, the trial court's inference that George's intent in making the transfers was to make it possible for Timothy to get title to the accounts after George's death and not to make a present gift was an inference reasonably drawn.

It necessarily follows that the conclusion that there had been no valid gift of the accounts to Timothy and that they remained the property of George's estate was justified.

There is no error.

In this opinion the other judges concurred.